IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Martisha Jamison, *Personal Representative to the Estate of Syron Shuler*, <br><br> Plaintiff, <br><br> v. <br><br> Colonial Group, Inc. *d/b/a* EnMark Stations, Inc.; EnMark Stations, LLC; EnMark Stations, Inc.; Kembelina Duggins; John Does 1–5, <br><br> Defendants. | Case No. 5:24-cv-01593-JDA <br><br><br> **OPINION AND ORDER** |

This matter is before the Court following an Order to Show Cause why the Court should not remand the action to state court. [Doc. 6.] Having reviewed the response, reply, and applicable case law, the Court concludes that it does not have subject matter jurisdiction over this action and, therefore, the case is remanded to the Orangeburg County Court of Common Pleas.

**BACKGROUND**

Plaintiff filed this case in the Orangeburg County Court of Common Pleas on February 14, 2024 [Doc. 1-1], and filed a First Amended Complaint in the state court on February 23, 2024 [Doc. 1-2]. The First Amended Complaint alleges that Syron Shuler was fatally shot by an armed assailant as he was leaving the EnMarket convenience store in Orangeburg, South Carolina, on October 8, 2023. [*Id.* ¶ 1.] It asserts one cause of

action for negligence against all Defendants.[1] [*Id.* ¶¶ 12–38.] Defendants Colonial Group, Inc. *d/b/a* EnMark Stations, Inc.; EnMark Stations, Inc.; and Kembelina Duggins (collectively, "Removing Defendants") removed the case to this Court on March 29, 2024. [Doc. 1.]

On April 8, 2024, the Court issued an Order to Show Cause why the Court should not remand this action to the state court based on lack of subject matter jurisdiction.[2] [Doc. 6.] On April 19, 2024, Defendants filed a response to the Order to Show Cause [Doc. 8], and on May 6, 2024, Plaintiff filed a reply to Defendants' response [Doc. 10].

## APPLICABLE LAW

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Remand of a case to state court following removal is governed by 28 U.S.C. § 1447, which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29

---

[1] Defendants Colonial Group, Inc. *d/b/a* EnMark Stations, Inc.; EnMark Stations, LLC; and EnMark Stations, Inc. are companies that Plaintiff alleges owned, managed, and/or operated the EnMarket convenience store on October 8, 2023. [Doc. 1-2 ¶¶ 7–9.] Defendant Kembelina Duggins is alleged to have been an assistant manager at the EnMarket convenience store on October 8, 2023. [*Id.* ¶ 10; Doc. 1 ¶ 21.]

[2] The Fourth Circuit Court of Appeals has explained that, in a removed case, "a district court may inquire *sua sponte* whether it has subject matter jurisdiction and impose on the defendants the burden of demonstrating jurisdiction." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008).

2

F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction." *Id.* Thus, remand is necessary if federal jurisdiction is doubtful. *Id.*

In this case, Removing Defendants allege that removal was proper because the district court has diversity jurisdiction to hear Plaintiff's claims under 28 U.S.C. § 1332, which grants district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of all interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). Section 1332 requires complete diversity of all parties, which exists where "no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

## DISCUSSION

In their Notice of Removal, Removing Defendants concede that Plaintiff and Defendant Duggins are both citizens and residents of South Carolina. [Doc. 1 ¶¶ 6, 20.] However, Removing Defendants contend that Duggins "is not a proper party to this action" and instead "is a sham defendant named solely to destroy diversity." [*Id.* ¶ 20.] Thus, they assert that complete diversity of citizenship exists between the parties because the Court must ignore the citizenships of sham Defendant Duggins and allegedly fictitious Defendants EnMark Stations, LLC and John Does 1–5.[3] [*Id.* ¶ 22.]

---

[3] The citizenship of John Does 1–5, who have yet to be identified, cannot be taken into consideration when determining whether removal is proper. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of [diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be disregarded."). The Removing Defendants contend that EnMark Stations, LLC, is a fictitious organization because there are "no records filed with the South Carolina Secretary of State's office confirming the existence of Enmark Stations, LLC." [Doc. 1 ¶ 4.]

3

The fraudulent joinder doctrine permits a defendant to remove a case to federal court despite the presence of another non-diverse defendant. *Mayes*, 198 F.3d at 461. The party asserting fraudulent joinder "bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Rule] 12(b)(6)" of the Federal Rules of Civil Procedure. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (internal citation omitted). To establish fraudulent joinder, the removing party must show either "outright fraud in the plaintiff's pleading of jurisdictional facts" or that "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (internal quotation marks omitted).

Here, Removing Defendants cannot meet the heavy burden of establishing that Duggins is fraudulently joined. They do not assert outright fraud in Plaintiff's pleading, and, with all issues of law and fact construed in Plaintiff's favor, Removing Defendants cannot show that there is no possibility that Plaintiff would be able to establish a cause of action against Duggins in state court.

To establish a cause of action for negligence in South Carolina, a plaintiff "must prove the following four elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." *Thomasko v. Poole*, 561 S.E.2d 597, 599 (S.C. 2002). "A person who operates a commercial establishment but is neither an owner nor a lessee may nonetheless have a duty to

exercise reasonable care to maintain safe premises." *Bryant v. Hodges Mgmt. Co., Inc.*, No. 9:20-cv-04217-DCN, 2021 WL 2003188, at *3 (D.S.C. May 19, 2021). Whether such person has a duty "depends upon control of the premises, not necessarily ownership." *Id.* (emphasis omitted). "[M]erely being a manager or employee does not evidence a sufficient level of control." *Id.* (internal quotation marks omitted). To determine whether a person has sufficient control to trigger a duty to exercise reasonable care to maintain safe premises, courts "consider the person's power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee the management of the property." *Id.*

Removing Defendants first argue that Duggins cannot be held liable in her individual capacity because "she does not satisfy the requisite degree of control [to] permit recovery against employees in their individual capacity." [Doc. 8 at 5.] The Court begins its analysis by reviewing the allegations in the Amended Complaint concerning Duggins.

The Amended Complaint alleges that Defendants—including Duggins—"had the legal duty to protect lawful visitors and invitees . . . from reasonably foreseeable third-party criminal attacks," "to keep the premises in a state consistent with due regard of the safety of their lawful visitors and invitees," and "to reasonably prevent or control foreseeable third-party criminal activity likely to endanger the safety of lawful visitors to the subject premises." [Doc. 1-2 ¶¶ 14–16.] It further alleges that Defendants—including Duggins—were negligent in many ways, including failing to provide adequate security, to adequately assess the need for security, to monitor activity on the premises that was potentially harmful, to hire competent security personnel, to have adequate patrols on the premises to deter dangerous activity, and to follow the instructions and/or

recommendations of law enforcement. [*Id.* ¶ 18.] Finally, the Amended Complaint alleges specifically that Duggins "voluntarily undertook a duty to protect invitees . . . from dangerous conditions and third-party criminal attacks" and acted negligently in failing to warn of dangers on the premises, failing to monitor surveillance cameras, failing to notify law enforcement of a dangerous person and situation, and failing to adhere to company policies and procedures. [*Id.* ¶¶ 30–31.]

To support their argument that Duggins lacked the requisite control over the premises to permit recovery against her, Removing Defendants rely on Duggins' affidavit and the affidavit of Libby Bates, Vice President of Operations for EnMark Stations, Inc. [Docs. 8-6; 8-7.] Duggins avers that "Assistant Managers are part of lower management within the EnMarket corporate structure" and do "not have any authority, power, or control[] over any of Enmark Stations, Inc.'s policies, procedures, processes, and/or determinations regarding security measures as to the deterrence and/or prevention of criminal behavior." [Doc. 8-6 ¶ 6.] Bates likewise avers that Assistant Managers do not have authority, power, or control over policies, procedures, processes, and/or determinations about security measures and that they "are part of lower management within Enmark Stations, Inc.'s corporate structure." [Doc. 8-7 ¶ 5.] On the other hand, Plaintiff has provided job descriptions from EnMarket's hiring website that describe the job responsibilities of assistant managers. [Docs. 10-2; 10-3.] Those job descriptions include the following duties and responsibilities: "[m]onitor all areas of the property to maintain safety"; [k]eep current in knowledge and awareness of all safety concerns and provide and maintain a safe environment"; "[f]ollow the company video security procedures and policies"; and "[d]irect, monitor, and adhere to all Enmarket, federal, state,

6

and local safety-related regulations." [Docs. 10-2; 10-3.] Accordingly, the evidence before the Court demonstrates a factual dispute regarding Duggins' ability to control the premises.

Based on the record before the Court, and resolving all issues of law and fact in Plaintiff's favor, the Court concludes that Removing Defendants have not met their heavy burden of demonstrating that there is no possibility that Plaintiff can establish that Duggins had sufficient control over the EnMarket convenience store to maintain a cause of action against her. *See Hartley*, 187 F.3d at 424. Moreover, it is conceivable that Plaintiff could demonstrate, with the benefit of discovery, that Duggins exercised sufficient control to impose on her a duty to inspect, warn, and maintain the premises in a safe condition to protect visitors and invitees. *See Hardrick v. Wal-Mart Stores, Inc.*, No. 9:18-cv-01345-DCN, 2018 WL 3867805, at *3 (D.S.C. Aug. 15, 2018) (concluding that a store manager was not fraudulently joined where the plaintiff brought a negligence claim against the store manager for his failure to warn the plaintiff about a cart's danger and for continuing to use the dangerous cart in the store because it was conceivable that plaintiff could demonstrate after discovery that the manager owed a duty to the plaintiff and that the cart was a known hazard that the manager should have repaired or replaced); *see also Laing v. Truist Bank*, No. 3:20-cv-01134-JMC, 2020 WL 4462977, at *3–4 (D.S.C. Aug. 4, 2020) (discussing cases and concluding that a manager was not fraudulently joined because the plaintiff "could have [had] a cause of action for negligence against [the manager] based on a duty to warn customers of hazards on the property or a duty to inspect and maintain the grounds"); *Cook v. Wal-Mart Stores, Inc.*, No. 3:17-cv-1391-DCC, 2018 WL 345085, at *2, 5 (D.S.C. Jan. 10, 2018) (concluding that the defendants had not met their burden of

7

demonstrating there was no possibility that the plaintiff could establish a cause of action against an assistant manager).[4]

Alternatively, Removing Defendants contend that even if Duggins had "sufficient control over the premises, Plaintiff's claims against her still fail as a matter of law for multiple reasons, cementing her status as a sham defendant." [Doc. 8 at 5.] Removing Defendants specifically argue that Duggins cannot be liable for the criminal acts of a third party because the shooting was not foreseeable. [*Id.* at 9–13.]

South Carolina has adopted the balancing test to determine foreseeability. *Bass v. Gopal, Inc.*, 716 S.E.2d 910, 915 (S.C. 2011). This test explains "how to determine (1) if a crime is foreseeable, and (2) given the foreseeability, determine the economically feasible security measures required to prevent such harm." *Id.* at 915. It "acknowledges that duty is a flexible concept, and seeks to balance the degree of foreseeability of harm against the burden of the duty imposed." *Id.* (internal quotation marks omitted). Under the balancing test, "the presence or absence of prior criminal incidents is a significant factor in determining the amount of security required of a business owner, but their

---

[4] Removing Defendants attempt to distinguish the instant case that involves a "spontaneous, unexpected, and unforeseeable occurrence" from cases that involve "static conditions continually present over the course of a period of time, observable upon reasonable inspection, and may foreseeably cause injury to an invitee who may encounter them." [Doc. 8 at 8.] However, Removing Defendants do not direct the Court to any case law to support this distinction in the context of whether a manager or employee has a sufficient level of control to trigger a duty; instead, they contend that "[r]eason and common-sense dictate that a much higher degree of control must be required to attribute individual liability to a lower-level manager in the contact of security issues and spontaneous and criminal acts of third persons such as those in the case at bar." [*Id.* at 9.] Additionally, the Court is unaware of any case that links the degree of control required to establish manager liability to the type of condition or injury at issue. Removing Defendants' argument appears to attempt to raise the issue of foreseeability in the context of manager liability, but the Court views these as two different issues and separately addresses Removing Defendants' foreseeability argument.

absence does not foreclose the duty to provide some level of security if other factors support a heightened risk." *Id.*

In reply to Removing Defendants' response to the Order to Show Cause, Plaintiff submitted 82 pages of incident reports from the Orangeburg County Sheriff's Office related to crimes that occurred from 2015 through 2023 at the EnMarket Convenience Store, including kidnapping and abduction, pointing and presenting a firearm, and multiple instances of aggravated assault, robbery, and assault and battery. [Doc. 10-1.] Accordingly, the evidence before the Court demonstrates a factual dispute regarding foreseeability. Based on the record before the Court, and resolving all issues of law and fact in Plaintiff's favor, the Court concludes that Removing Defendants have not met their heavy burden of demonstrating that there is no possibility that Duggins can be liable for the criminal acts of a third party based on the foreseeability of the shooting.[5] *See Moise v. Alliedbarton Sec. Servs., LLC*, No. 3:12-cv-02022-MBS, 2016 WL 319971, at *2 (D.S.C. Jan. 27, 2016) (concluding that an assault at a mall was foreseeable where prior incidents in the area included over one dozen assault calls and two strong arm robbery reports at

---

[5] Removing Defendants' foreseeability argument "effectively argues that this is a sham case," rather than that Duggins is a sham Defendant. *See Bryant*, 2021 WL 2003188, at *4; [*see* Doc. 8 at 9 (arguing that "Plaintiff's allegations and the facts of this case do not yield any possibility of Plaintiff recovering against *the Defendants* and especially Duggins" (emphasis added))]. Beyond the determination that Removing Defendants have not demonstrated that there is no possibility that Duggins can be liable based on the foreseeability of the shooting, "[t]he court will not address such an argument regarding the merits of the case in the context of" determining whether the case should be remanded. *Bryant*, 2021 WL 2003188, at *4. For the same reason, the Court will not address Removing Defendants' conclusory argument that "any alleged breach of any duties by Duggins . . . could not be found to have proximately cause[ ] the injuries suffered by the decedent and Plaintiff." [Doc. 8 at 13.] The Court notes that Removing Defendants filed an Answer to the Amended Complaint as opposed to a motion to dismiss.

9

the mall premises); *Fagnant v. Johnson*, No. 4:11-cv-00302-RBH, 2013 WL 3354580, at *7 (D.S.C. July 3, 2013) (concluding that a crime at a Kmart store was foreseeable based on several incidents that had occurred in the parking lot and a CRIMECAST report offered by the plaintiffs' expert); *Bass*, 716 S.E.2d at 916 (concluding that an aggravated assault in which a guest was shot in the leg at a motel was foreseeable where the victim supplied a CRIMECAST report showing an especially high probability of crime at the motel compared to the national and state averages as well as an increased risk of robbery and rape compared to the county average).

In concluding that Removing Defendants cannot meet the heavy burden of showing that Plaintiff has no possibility of maintaining a negligence action against Duggins, the Court is mindful that the fraudulent joinder standard is more favorable to Plaintiff than the Rule 12(b)(6) standard and that any doubt as to jurisdiction should be resolved in favor of remand.  Because the Court concludes that Duggins was properly joined, Duggins' citizenship is considered for purposes of diversity jurisdiction.  As Plaintiff and Duggins are both citizens and residents of South Carolina, the parties are not completely diverse as required by 28 U.S.C. § 1332.  Thus, this Court lacks subject matter jurisdiction over this action.

## **CONCLUSION**

Wherefore, based upon the foregoing, this action is REMANDED to the Orangeburg County Court of Common Pleas.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

May 22, 2024
Columbia, South Carolina